HARVEY R. LINBARGER, DEFENDANT IN ERROR, v. BOARD OF EDUCATION OF WEST NEW YORK, PLAINTIFF IN ERROR.

Submitted March 25, 1912—Decided November 18, 1912.

1. Since the passage of our Negotiable Instruments act in 1902, a municipal bond in the hands of a holder "in due course" is a valid obligation against the municipality, notwithstanding that it was delivered by the municipal president and clerk without authority for such action having been conferred upon them.
2. The coupons which have been cut from a municipal bond are entitled to the same immunity in the hands of a holder "in due course" as are the bonds of which they were originally a part.

On error to the Supreme Court.

For the plaintiff in error, *Herbert Boggs* and *Mark A. Sullivan.*

For the defendant in error, *Thomas Mills Day.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This suit was brought by the holder of certain interest coupons which had been cut from a part of a series of one hundred and five bonds of $1,000 each, payable to bearer, purporting to have been issued by the board of education of the town of West New York, under date of November 1st, 1907, and maturing as follows: Two of them on the 1st of January, 1912, and two of them on the 1st of January in each year thereafter. The bonds were complete and regular on their face, and were sold to certain banking institutions and individuals by the firm of W. J. Hayes & Son, at various times ranging from three to six months after their date, the purchasers paying full value for them, and taking them without notice of any infirmity in them, or of any lack of authority in Hayes & Son to negotiate them.

The defendant corporation was duly authorized by a vote of the people of the school district to issue one hundred and five bonds of $1,000 each, and pursuant to that authorization the board, at a regular meeting held July 31st, 1907, resolved to purchase a tract of land for school purposes, to erect thereon a school building, and, in order to secure the money necessary therefor, to issue bonds of the number and denomination authorized, so conditioned that two of said bonds should mature on January 1st, 1912, and two in each year thereafter until the whole should have been paid. The board then adjourned to meet August 12th next following, to take such further action as might be necessary to carry into effect such resolution. At the adjourned meeting the clerk was authorized to publish an advertisement offering the bonds for sale. At a subsequent regular meeting of the board held September 8th, 1907, it was reported that no bids had been received, and it was then resolved to sell the bonds at private sale. At a regular meeting held September 30th, 1907, it was resolved that the printing committee be authorized to cause the issue of bonds and coupons to be printed as speedily as possible. At a regular meeting of the board held October 28th, 1907, it was resolved that the president and clerk be authorized and directed to properly execute the one hundred and five bonds. At a regular

meeting, November 25th, 1907, W. J. Hayes & Son having offered par for the bonds, a resolution was adopted that it was deemed expedient and advisable that the board accept the terms of the offer of W. J. Hayes & Son for the purchase of the bonds, and the president and clerk were authorized to enter into all necessary contracts for the better carrying out of the terms of the offer. On December 19th, 1907, a special meeting of the board was held, and a resolution was then adopted which, after reciting that the issue of the bonds had been awarded to the firm of W. J. Hayes & Son, and that the firm had requested that the money secured from the sale of the bonds be left with them on deposit, subject to the order of the board of education, resolved that the moneys secured through the sale of the bonds be placed in the banking house of W. J. Hayes & Son, subject to the order of the board, to be drawn at such times and in such amounts as in the judgment of the board would be for the best interest of the school district; and that the president and clerk be authorized and instructed to enter into a contract with W. J. Hayes & Son in accordance with the resolution. Subsequently, and without any order from, or knowledge by the board, the bonds with the coupons attached thereto were prepared by W. J. Hayes & Son, and afterwards signed by the president and clerk of the board, the seal of the corporation attached, and immediately thereafter taken possession of by W. J. Hayes & Son. The execution and delivery of the bonds were done without the knowledge of the board, and no information with regard thereto came to the board until after Hayes & Son had disposed of the bonds. Hayes & Son defaulted in their payment of the purchase price of the bonds, and the defendant board has never received any consideration for them.

The case was tried before Mr. Justice Bergen without a jury, by consent of counsel, and upon a finding of the above-recited facts a judgment in favor of the plaintiff was directed. The defendant now contends that upon the facts found judgment should have been entered in its favor.

The rights of the parties to this litigation depend upon the proper solution of two questions—*first,* were the bonds exe-

cuted by authority of the board of education? And *second,* was there a valid delivery of them by the board? The resolution of October 28th is conclusive as to the legality of the execution of these instruments, for it expressly directs it to be done by its president and clerk. Did the surrender of the bonds by the president and clerk to Hayes & Son, without requiring a compliance by them with the condition upon which they were entitled to receive them, constitute a valid delivery of them so far as the plaintiff is concerned?

Municipal bonds payable to bearer are negotiable instruments, and the rights and liabilities of the makers and holders of such of them as have come into existence since the passage of our Negotiable Instruments act (and that is the fact in the present case) are determined by the provisions of that act. *Montvale* v. *People's Bank,* 45 *Vroom* 464. The sixteenth section of that act (*Comp. Stat., p.* 3737) provides as follows: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto; as between immediate parties, and as regards a remote party other than a holder in due course, the delivery in order to be effectual must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in that instrument; but where the instrument is in the hands of a holder in due course a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively presumed." In the case cited it was held by this court that certain bonds of the borough of Montvale, which it had authorized to be issued, and which after execution had been left in the custody of its mayor for safe keeping, pending negotiations for their sale, and which had been wrongfully appropriated by that officer to his own use, and pledged by him to the plaintiff bank as collateral security for the payment of a loan made by it to him, constituted a valid obligation against the municipality in the hands of the bank which was "a holder in due course;" the reason being

that as to such a holder the statute required a valid delivery by the borough to be conclusively presumed.

The assignors of the present plaintiff were, each of them, "holders in due course" of the bonds from which the coupons were cut, within the meaning of that description as defined by section 52 of the Negotiable Instruments act. The coupons, being promises to pay the interest accruing from time to time on the original obligations, are entitled to the same immunity in the hands of a holder in due course as are the bonds of which they were originally a part. The assignment of the coupons by the original purchasers to the plaintiff transferred to him all the rights which they, as holders in due course, were entitled to assert against the maker. *Dan. Neg. Inst.,* § 803, and cases cited. The case of *Montvale* v. *People's Bank, supra,* therefore, controls that now under consideration, so far as the question of delivery is concerned, and the judgment under review must be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, WHITE, TREACY, JJ. 12.

*For reversal*—None.